1
2
3          UNITED STATES DISTRICT COURT
4          NORTHERN DISTRICT OF CALIFORNIA
5
6
7   MATTHEW JOHNSTONE,
8          Plaintiff,                          No. C 09-4872 PJH
9      v.                                      **ORDER GRANTING MOTION
                                               FOR SUMMARY JUDGMENT**
10  CITY OF SAN CARLOS, et al.,
11         Defendants.
    _____/
12
13         Defendants' motion for summary judgment came on for hearing on April 6, 2011
14  before this court.  Plaintiff Matthew Johnstone ("Johnstone" or "plaintiff"), appeared through
15  his counsel, Andrew Pierce.  Defendants City of San Carlos ("the City") and Jeff McCourtie
16  ("McCourtie")(collectively "defendants") appeared through their counsel, Jeffrey Vucinich
17  and Patrick Co.  Having read all the papers submitted, including the parties' supplemental
18  briefing, and carefully considered the relevant legal authority, the court hereby GRANTS
19  defendants' motion for summary judgment, as follows.
20                              **BACKGROUND**
21         This action arises out of plaintiff's claim that he was wrongfully prosecuted for
22  criminal activity.
23  A.     Background Allegations/Facts
24         At the time of the events in question, plaintiff was a twenty-three year old male, with
25  a history of developmental and other cognitive disabilities.  See Amended Complaint
26  ("Amended Complaint"), ¶ 10.  Plaintiff had been participating in a Job Corps program since
27  the age of twenty-one in Clearfield, Utah.  Id. at ¶ 11.  On June 28, 2007, plaintiff traveled
28  from Utah to his parent's home in San Carlos, California, for vacation.  Id. at ¶ 12.  On July

United States District Court

For the Northern District of California

15, 2007, plaintiff's father drove plaintiff to the airport, so that plaintiff could catch an early

return flight to Utah on July 16, 2007.  Id. at ¶ 13.

On July 22, 2007, a young woman named Nicole Smith ("Smith"), one of plaintiff's

acquaintances who lived in San Carlos, lost control of her car and crashed into a house two

blocks from where she lived.  Amended Complaint, ¶ 14.  She suffered bruising and

reported to San Carlos police that her brakes had failed.  A responding officer saw that the

brakes were not functioning properly when depressed, and a mechanic subsequently

confirmed that the brake line hose behind the right front tire had been severed.  See id.

The San Carlos Police Department, and specifically defendant police detective Jeff

McCourtie ("McCourtie") undertook investigation of the matter.  Complaint, ¶ 16.

McCourtie interviewed Smith on three different occasions on July 25, 2007, July 26,

2007, and August 15, 2007.  See Declaration of Jeff McCourtie ISO Summary Judgment

("McCourtie Decl."), Exs. 2-3, 6.  During the course of these interviews, Smith named

several possible individuals who may have had a motive to cut her brake lines.  See

McCourtie Decl., Ex. 2 at 7-12.  Plaintiff was one of the possible suspects named by Smith.

Id. at 25.

Among the statements Smith made to McCourtie implicating plaintiff during her first

two interviews with McCourtie were:  that Smith had dated plaintiff on and off since high

school, and that she had broken up with him about a year prior to the brake incident; that

plaintiff was controlling, constantly called her, and was trying to get back together with her;

that plaintiff told her he had been protecting Smith from another ex-boyfriend named "M"

who was stalking Smith and whom plaintiff asserted was his cousin; that plaintiff had told

Smith that he had friends, including police officers, looking out for her and providing her

protection; that plaintiff was still upset about their breakup and became "very angry" with

Smith when she told him she only wanted to be friends, as recently as a few weeks before

the accident; that Smith believed plaintiff was an auto mechanic; that Smith believed

plaintiff to be one of the two individuals most likely responsible for the cutting of her brake

2

United States District Court

For the Northern District of California

1    lines; and that even if plaintiff had not cut the brake lines himself, he could have had one of

2    his friends cut her brake lines.  See McCourtie Decl., Ex. 2 at 23-26, 30-31, 33; id., Ex. 3 at

3    3-6.

4          Following his first two interviews with Smith, McCourtie arranged for Smith to make a

5    pre-textual phone call to plaintiff on July 26, 2007.  See id., Ex. 4.  During that telephone

6    call, Smith told plaintiff about the accident.  Throughout the course of his conversation with

7    Smith, plaintiff indicated that he had been in Hawaii for a friend's funeral since July 16, and

8    that it was his cousin "M"'s friend who had cut Smith's brake line.  Plaintiff also indicated

9    that he "knew that something was going to happen" and had been trying to call Smith for

10   that reason, and further that he "already knew" that Smith's accident had happened before

11   receiving her phone call.  See McCourtie Decl., Ex. 4 at 2-5.  Plaintiff proceeded to discuss

12   with Smith purported details of the "protection" that plaintiff's friends were supposedly

13   giving to Smith in order to protect her from "M" and his friends.  See id. at 8-12.  When

14   asked by Smith how somebody could have cut her brakes, plaintiff explained that someone

15   would have to "pop up the hood," and go underneath the car with a flashlight to get to the

16   brake line, and then "snip it."  Id. at 13.  Plaintiff stated that he had also checked

17   underneath Smith's car previously when she was at plaintiff's house, and that Smith had

18   been "leaking some air coolant."  Id. at 12-13.  Plaintiff further stated that he hoped that

19   Smith was not "putting" the accident on him or on his friends, and told plaintiff that if it were

20   plaintiff or his friends, Smith would already "be dead."  McCourtie Decl., Ex. 4 at 18-19.

21   Plaintiff then stated that he loved Smith and would do anything for her protection.  Id.

22   When Smith told plaintiff that they were no longer going out together, plaintiff appeared to

23   become agitated, and stated that if plaintiff and his friends are no longer protecting Smith,

24   she "will die."  Id. at 23.

25         Subsequently, on August 3, 2007, McCourtie himself interviewed plaintiff by

26   telephone.  See McCourtie Decl., Ex. 5.  During the course of this phone conversation,

27   plaintiff confirmed that he had been going out with Smith, and initially told McCourtie that

28

                                            3

United States District Court

For the Northern District of California

1   Smith's ex-boyfriend "M" was trying to kill Smith, and that plaintiff thought that "M" had cut

2   Smith's brake line.  See id., Ex. 5 at 6-7, 17-25.  Plaintiff later acknowledged, however, that

3   "M" was not his cousin, and admitted that he had lied to Smith about different things,

4   including about "M," about the "protection" plaintiff and his friends were supposedly

5   providing to Smith, and about plaintiff being in Hawaii.  Id. at 7, 12-15, 22.  At one point,

6   McCourtie told plaintiff directly that he believed that plaintiff had something to do with

7   Smith's accident.  McCourtie Decl., Ex. 5 at 18.  In response, plaintiff initially denied cutting

8   the brake line.  See id.  He then confessed to cutting the brake line, before denying the

9   accusation once more, and then once again, he subsequently admitted to the crime before

10  finally issuing a last denial.  McCourtie Decl., Ex. 5 at 23 (admission that friend cut brake

11  lines); 25 (admission that plaintiff himself cut brake line with wire pliers); 28 (denial that

12  plaintiff committed crime); 32-33 (admission of crime); 40 (final denial of crime).

13  Throughout the conversation, McCourtie repeatedly told plaintiff that all he wanted was for

14  plaintiff to simply tell the truth.  Plaintiff, who admitted to McCourtie that he was an habitual

15  liar, stated several times that he was "scared" and/or did not "know what to say."  Id.., Ex. 5

16  at 28, 30, 32, 40.

17        After McCourtie's telephone interview with plaintiff, McCourtie conducted his third

18  interview with Smith on August 15, 2007.  During this interview, among other things, Smith

19  reiterated her belief that either plaintiff or her ex-boyfriend "M" committed the crime.

20  McCourtie Decl., Ex. 6 at 11.  When McCourtie told Smith that plaintiff was not even in town

21  the week of the accident, Smith stated that she had noticed squeaking brakes and fluid

22  under her car in the week or two before the accident actually occurred.  Id., Ex. 6 at 12-13.

23        On August 22, 2007, McCourtie applied for a search warrant in order to search

24  plaintiff's residence for any "pliers" or "tools" capable of cutting a vehicle brake line, and

25  submitted an affidavit in support thereof.  See, e.g., McCourtie Decl., Ex. 1 (police report);

26  see also id., Ex. 7 (search warrant and supporting affidavit).  The warrant was approved by

27  a state superior court judge that same day, and the search of the premises conducted

28

4

1   pursuant to the warrant produced a pair of blue handled pliers in plaintiff's father's toolbox.

2   McCourtie Decl., Ex. 1 at 27, 30.

3       On October 2, 2007, another state superior court judge issued an arrest warrant,

4   based upon McCourtie's police report and supporting declaration. <u>See</u> McCourtie Decl.,

5   Ex. 1 (police report); 8 (declaration in support of arrest warrant); 9 (10/2/07 arrest warrant).

6   On October 3, 2007, plaintiff was arrested at the Job Corps program he was attending in

7   Utah. He spent 21 days in custody, before being released on bail. Amended Complaint at

8   ¶ 21.

9       A preliminary examination in connection with prosecution of the case against plaintiff

10   began on February 28, 2008. Complaint, ¶ 22. The preliminary hearing was held in order

11   to determine if there was probable cause. <u>See</u> Declaration of Patrick R. Co ISO MSJ ("Co

12   Decl."), Ex. A. The evidence presented at the hearing, which included McCourtie's

13   testimony regarding Smith's prior interviews, mirrored the information contained in

14   McCourtie's police report. <u>See id.</u>; <u>see also</u> McCourtie Decl., Ex. 1 (police report). A

15   finding of probable cause was made.

16       Subsequently, on March 6, 2008, McCourtie applied for another search warrant and

17   submitted an affidavit in support thereof, in order to obtain plaintiff's phone records, for the

18   purpose of determining his location during the relevant time periods. McCourtie Decl., Ex.

19   1 (police report); Ex. 10 (affidavit for search warrant). The affidavit was, once again, based

20   on information contained in McCourtie's police report. The search warrant issued.

21       Trial of the case against plaintiff occurred in August 2008. At the close of the

22   prosecution's case, the trial court judge dismissed three of the four charges against plaintiff

23   (specifically, charges under Penal Code §§ 245(A)(1), 422, and 594(B)(1)). Amended

24   Complaint, ¶ 28. The jury acquitted plaintiff of the remaining charge – under Penal Code §

25   646.9(A) – on August 27, 2008. <u>Id</u>. at ¶ 29.

26

27   B.     The Instant Action/Procedural History

28

United States District Court

For the Northern District of California

1    Plaintiff filed the instant action on October 13, 2009.  Plaintiff generally alleges that

2  defendants, without cause, "seized upon [plaintiff] as the suspect in the case," even though

3  he was in Utah at the time of the crime; had no knowledge of how to cut a brake line; had

4  no driver's license; and Smith's current boyfriend was himself a trained mechanic.  See

5  Amended Complaint. at ¶ 15.  Plaintiff also alleges that Smith gave contradictory

6  interviews, the first time implicating others, and the second time implicating plaintiff only

7  after McCourtie suggested the implication to her.  Amended Complaint, ¶¶ 18-20.  Plaintiff

8  further alleges that Smith, who also suffered from developmental disabilities, was highly

9  suggestible.  Notably, asserts plaintiff, Smith stated for the first time during her August 15

10  interview that she had noticed problems with her car on July 16 (the same day plaintiff

11  returned to Utah), even though she had previously stated that her brake line had been cut

12  on or about July 21, 2007.  Id. at ¶ 20.

13    Plaintiff further alleges that evidentiary records conclusively established that plaintiff

14  had been in Utah, not California, at the time that Smith's brakes were cut.  Indeed,

15  throughout April 2008 – at the time plaintiff's criminal case was being prosecuted – plaintiff

16  alleges that McCourtie received additional records, performed further brake tests, and even

17  went so far as to interview individuals at plaintiff's Job Corps site in Utah – all of which

18  indicated that Smith's brake line was cut long after plaintiff had traveled back to Utah on

19  July 16.  Amended Complaint at ¶¶ 25-27.  Similarly, in May and June 2008, defendants

20  received additional lab reports and considered expert testimony allegedly exonerating

21  plaintiff of the crime.  Id.  Nonetheless, defendants persisted in their prosecution of plaintiff,

22  to plaintiff's alleged detriment.

23    Plaintiff initially alleged six causes of action against defendants the City and

24  McCourtie, as well as defendants County of San Mateo, James Fox, Stephen Wagstaffe,

25  and Rick Good (collectively "County defendants").

26    On February 18, 2010, the court granted two motions to dismiss, filed by the City

27  defendants on the one hand, and the County defendants on the other.  With respect to the

28

6

United States District Court

For the Northern District of California

1   County defendants, the court dismissed plaintiff's malicious prosecution claim, all claims

2   against the County based on Eleventh Amendment immunity principles, and dismissed

3   claims against the individual County defendants on prosecutorial immunity principles, to the

4   extent the individuals were sued in their official capacities.  See Order Granting Motions to

5   Dismiss at ¶¶ 1-4.  Subsequent to the court's order, plaintiff dismissed all outstanding

6   claims against the individual County defendants in their personal capacities.  See docket

7   no. 40.  Thus, there are no claims currently pending against the County or its employees.

8        With respect to the City defendants, the court denied dismissal of plaintiff's section

9   1983 claim against McCourtie on qualified immunity grounds.  The court then granted

10  dismissal of the section 1983 claim against the City for failure to state a Monell claim, with

11  leave to amend; granted dismissal of the malicious prosecution claim against the City with

12  prejudice; and granted dismissal of the intentional infliction of emotional distress and

13  negligence claims against the City, with leave to amend.  See Order Granting Motions to

14  Dismiss at ¶¶ 5-7.

15       Plaintiff duly filed the operative Amended Complaint on March 19, 2010.  The

16  amended complaint states three causes of action against the City defendants: (1) violation

17  of civil rights under § 1983 (against defendant McCourtie); (2) violation of civil rights under

18  § 1983 (against City of San Carlos); and (3) negligence (against McCourtie and City of San

19  Carlos).  See Amended Complaint, ¶¶ 33-52.

20       In May 2010, the City defendants again moved to dismiss.  On May 17, 2010, the

21  court granted the motion, and dismissed plaintiff's negligence cause of action, as pled in

22  the Amended Complaint.  The dismissal was without leave to amend.

23       Accordingly, only two claims remain at issue, as pled in the operative Amended

24  Complaint: a section 1983 claim against defendant McCourtie; and a section 1983 claim

25  against defendant City of San Carlos.

26

27       Defendants now move for summary judgment as to both claims.

28

7

**United States District Court**
For the Northern District of California

**DISCUSSION**

A.      Legal Standard

        Summary judgment is appropriate when there is no genuine issue as to material

facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

Material facts are those that might affect the outcome of the case.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there

is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

        A party seeking summary judgment bears the initial burden of informing the court of

the basis for its motion, and of identifying those portions of the pleadings and discovery

responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp.

v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other

than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885,

888 (9th Cir. 2003).

        On an issue where the nonmoving party will bear the burden of proof at trial, the

moving party can prevail merely by pointing out to the district court that there is an absence

of evidence to support the nonmoving party's case.  Celotex, 477 U.S. at 324-25.  If the

moving party meets its initial burden, the opposing party must then set forth specific facts

showing that there is some genuine issue for trial in order to defeat the motion.  See Fed.

R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

B.      Legal Analysis

        Defendants assert that summary judgment is appropriate as to plaintiff's section

1983 claims on five different grounds:  (1) plaintiff's section 1983 claim against McCourtie

alleging violation of plaintiff's Fourth Amendment rights fails, because McCourtie had

probable cause to arrest plaintiff and/or execute search warrants for violation of certain

Penal Code and Vehicle Code provisions; (2) even if probable cause were lacking,

defendant McCourtie is protected by qualified immunity; (3) plaintiff's section 1983 claim

8

United States District Court
For the Northern District of California

1    against McCourtie alleging violation of plaintiff's Due Process rights, fails on the merits; (4)

2    plaintiff's section 1983 claim against McCourtie alleging violation of plaintiff's Equal

3    Protection rights also fails on the merits; and (5) plaintiff's section 1983 claim against the

4    City of San Carlos fails because plaintiff cannot make the requisite showing required for

5    Monell liability to attach.

6         1.    Probable Cause to Arrest/Search (Section 1983 Claim against McCourtie)

7         Plaintiff's section 1983 claim against McCourtie alleges a violation of plaintiff's

8    Fourth Amendment rights in connection with probable cause determinations made at three

9    different stages of the case: (1) the October 2, 2007 arrest warrant; (2) the February 28,

10   2008 preliminary hearing; and (3) the subsequent March 6, 2008 search warrant.[1]  Plaintiff

11   asserts not only that probable cause was lacking in each instance, but that the evidence

12   provided by McCourtie to support probable cause on each occasion was either falsified or

13   misrepresented – thereby rendering plaintiff's arrest and subsequent prosecution unlawful.

14   Defendants, however, contend that the undisputed material facts show that Officer

15   McCourtie had probable cause to arrest plaintiff for violations of: Cal. Penal Code §

16   646.9(a)(statute prohibiting criminal stalking); Cal. Penal Code § 422 (prohibiting criminal

17   threats); Cal. Penal Code § 595 (prohibiting criminal vandalism); and/or Cal. Vehicle Code

18   §10852 (prohibiting wilful injury to or tampering of third party vehicles); and that the arrest

19   warrant, preliminary hearing, and subsequent search warrant were thus adequately

20   supported, and lawful under the Fourth Amendment.

21        In determining the existence of probable cause, the court first turns to the gravamen

22   of plaintiff's Fourth Amendment claim:  the October 2, 2007 arrest warrant pursuant to

23   which plaintiff's arrest was effected, and which plaintiff asserts was issued based on the

24   _____

25        [1]    Plaintiff does not appear to directly challenge any probable cause determination
     made in connection with the initial August 22, 2007 search warrant.  Plaintiff's supplemental
26   briefing clarifies that the present lawsuit arose "at the arrest warrant stage and immediately
     thereafter," and that the August 2007 search warrant and subsequent search of plaintiff's
27   family home "were not the proximate cause of the damages sought in this case."  See Pl.
     Supp. Brief at 2:4-6; 4:23-24.
28

United States District Court

For the Northern District of California

1   "then-current version" of McCourtie's police report (i.e., the report's first 31 pages).  See

2   McCourtie Decl., Ex. 1; Exs. 8-9.  As a general rule, probable cause to arrest exists when,

3   under the totality of the circumstances known to the arresting officer, a prudent person

4   would conclude there is a fair probability that the arrestee had committed, or was

5   committing, or was about to commit, a crime.  Beier v. City of Lewiston, 354 F.3d 1058,

6   1065 (9th Cir. 2004); see also Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).  The plaintiff

7   in a civil rights action has the burden of proving lack of probable cause, after a defendant

8   has provided "some evidence that the arresting officers had probable cause at the moment

9   of the arrest." Dubner v. City & County of San Francisco, 266 F.3d 959, 965 (9th Cir.

10  2001).

11      Where probable cause exists at the time of an arrest, the arrest does not violate the

12  Constitution even if the charges are later dropped or the person arrested is subsequently

13  acquitted.  DeFillippo, 443 U.S. at 36; Freeman v. City of Santa Ana, 68 F.3d 1180, 1189

14  (9th Cir. 1995).  When considering challenges to an issued warrant, courts must also be

15  mindful that a "magistrate's determination of probable cause should be paid great

16  deference by reviewing courts."  See Illinois v. Gates, 462 U.S. 213, 236 (1983)(internal

17  quotation marks omitted); see also Millender v. County of Los Angeles, 620 F.3d 1016 (9th

18  Cir. 2010).  Courts are to "take a practical approach in determining whether there is

19  sufficient probable cause, and to avoid 'interpreting affidavits in a hypertechnical, rather

20  than a common-sense, manner.'" Millender, 620 F.3d at 1025.  "Deference to the

21  magistrate, however, is not boundless."  U.S. v. Leon, 468 U.S. 897, 914 (1984).  Courts

22  are not to "defer to a warrant based on an affidavit that does not provide the magistrate

23  with a substantial basis for determining the existence of probable cause."  Millender, 620

24  F.3d at 1025.

25      Defendants argue that probable cause supporting the arrest warrant is demonstrated

26  by the following undisputed facts: Smith identified plaintiff as one of several possible

27  suspects – and then one of the two most likely suspects – in her interviews with McCourtie,

28

10

United States District Court
For the Northern District of California

and detailed plaintiff's history in following her and having his friends follow her in order to "protect" her from an ex-boyfriend; plaintiff and Smith used to date and plaintiff was angry over the fact that Smith had broken up with him; plaintiff admitted to committing the crime several times, before finally denying it; plaintiff's statements suggested that he was obsessed with the victim, and led her to believe she was in danger and needed to rely on plaintiff for protection; plaintiff's statements to Smith suggested that he knew how to cut a brake line; and in his admissions, plaintiff told McCourtie the time and place he committed the crime, and described the tools used to cut the brake line.  See McCourtie Declaration, Ex. 1 at 1-31 (police report); see also id., Exs. 2-3 (transcripts of interviews with Smith); id., Exs. 8-9 (arrest warrant and supporting affidavit).  Moreover, the first search warrant issued on August 22, 2007, resulted in the recovery of blue handled "pliers" that appeared consistent with the pliers that plaintiff told McCourtie had been used to cut the brakes.  See McCourtie Decl., Exs. 1, 7.  All of which, say defendants, is sufficient to establish the fair probability that plaintiff violated any of the four statutes in question, which prohibit criminal stalking, the making of criminal threats, vandalism, and the wilful tampering with a third party vehicle.

Plaintiff, naturally, opposes any finding of probable cause by highlighting the following:  that during her initial two interviews, Smith originally testified that everything was fine with her brakes the night before the accident; that plaintiff was out of town and in Utah during the time immediately preceding the accident; that McCourtie himself learned that plaintiff was out of town at the time the accident took place during the August 3, 2007 telephone interview; and that McCourtie was aware that plaintiff could be developmentally disabled, and thus could not provide accurate information on how to cut a brake line.  See McCourtie Decl., Ex. 2 at 3:7-8; Ex. 3 at 15:6-8; Ex. 5 at 1:22-24.

On balance, the court finds the undisputed facts sufficient to give rise to probable cause to believe that plaintiff could have committed the crimes of  stalking, vandalism, and/or the wilful tampering with a third party vehicle.  Smith herself first raised plaintiff's

United States District Court
For the Northern District of California

1   possible involvement in her very first interview with McCourtie; Smith later identified plaintiff

2   as a possible person most likely to have committed the crime, or to have gotten one of his

3   friends to commit the crime; Smith detailed the romantic history between the two, including

4   the fact that plaintiff was upset when the victim dumped him, and would repeatedly call her;

5   Smith told McCourtie that she believed that plaintiff had auto mechanic experience; plaintiff

6   identified to Smith possible ways in which her brake line could have been cut; plaintiff told

7   McCourtie that he owned a body shop; plaintiff admitted that he did, in fact, cut plaintiff's

8   brake lines, notwithstanding the fact that he ultimately recanted this admission; when asked

9   why his story changed, plaintiff told McCourtie that it was because he was "scared."

10          While plaintiff points out what he suggests are countervailing undisputed facts that

11   would lessen the likelihood, if taken on their own, that plaintiff could have committed the

12   crimes at issue (e.g., Smith's initial statement that her brakes were fine the night before the

13   accident; McCourtie's awareness that plaintiff was in Utah the night before the accident),

14   none of the evidence plaintiff relies on actually disputes the truth of any of the foregoing.

15   Rather, plaintiff simply contends that his cited facts warrant a different conclusion as to the

16   existence of probable cause.  Plaintiff also trivializes without convincingly explaining away

17   the fact that Smith *did* name plaintiff as one of the most likely suspects, *did* provide a

18   context to their relationship that would suggest a motive for the cutting of brake lines, and

19   that plaintiff did, in fact, admit to the crime – even if he later recanted it.  Thus,

20   notwithstanding plaintiff's reliance on facts that might individually fail to suggest the

21   probability that plaintiff committed any crime, the court finds that the totality of all facts,

22   considered together, support a finding of probable cause.  See Beck v. Ohio, 379 U.S. 89,

23   91 (1965)(probable cause exists when facts known to arresting officer would lead an officer

24   of ordinary care and prudence to objectively believe that the person arrested is guilty of a

25   crime).

26          Moreover, the court cannot ignore the fact that, based on the foregoing totality of

27   facts, a state superior court judge also found McCourtie's police report and supporting

28

United States District Court

For the Northern District of California

1    affidavit to set forth sufficient facts to establish probable cause for the issuance of the

2    arrest warrant.  This determination, particularly in light of the court's own review of the

3    evidence, is entitled to some degree of deference.  See Illinois, 462 U.S. at 236.

4         Similarly, plaintiff's contention that the February 2008 preliminary hearing, and the

5    March 2008 search warrant lacked probable cause is ultimately without merit.  Since

6    defendant's testimony at the preliminary hearing and in the search warrant affidavit were

7    based on the same facts set forth in his police report, the state superior court judge's

8    probable cause finding at the hearing and the subsequent approval of the search warrant

9    were supported by probable cause, for the reasons already highlighted above.  Again,

10   moreover, the fact that probable cause was determined to exist by state court judges in

11   both instances, is entitled to deference here.

12        To the extent plaintiff would seek to avoid the court's conclusion by arguing that

13   McCourtie falsified information contained in his police report, in the affidavits submitted in

14   support of the October 2007 arrest warrant and March 2008 search warrant, and presented

15   at the February 2008 preliminary hearing, the court finds no support for this argument.

16   Generally speaking, to maintain an unlawful seizure or search claim for judicial deception

17   under the Fourth Amendment, a plaintiff must show that the officer who applied for the

18   arrest or search warrant "deliberately or recklessly made false statements or omissions that

19   were material to the finding of probable cause."  KRL v. Moore, 384 F.3d 1105, 1117 (9th

20   Cir. 2004).  The materiality element - a question for the court - requires the plaintiff to

21   demonstrate that "the magistrate would not have issued the warrant with false information

22   redacted, or omitted information restored."  Lombardi v. City of El Cajon, 117 F.3d 1117,

23   1126 (9th Cir. 1997).  In Ewing v. City of Stockton, 588 F.3d 1218 (9th Cir. 2009), for

24   example, the Ninth Circuit concluded that a warrant application's two false statements

25   about the plaintiff were not material because an independent reliable source's detailed

26   description of the incident and identification of the plaintiff at the scene were sufficient to

27   establish probable cause.  Id. at 1224-25.  And in Lombardi, although a drug search

28

13

United States District Court

For the Northern District of California

1    warrant application failed to mention that the two confidential informants - whose

2    statements were the only evidence that the plaintiff had drugs in his home - had axes to

3    grind with the plaintiff, the Ninth Circuit nevertheless held that the omitted information was

4    immaterial because the informants' statements were given independently, were detailed,

5    were based on personal observation, were corroborated by one another, and were against

6    one informant's penal interests. <u>See</u> 117 F.3d at 1126-27.

7         Here, plaintiff argues that no probable cause findings would have been made by any

8    judicial officer if McCourtie's police report, warrant affidavits, and his preliminary hearing

9    testimony based thereon had not included the following false representations and/or

10   omissions: (a) that Smith had been having problems with her brakes as early as the week

11   preceding the accident (in reality, plaintiff argues, the victim initially stated that she noticed

12   no problems with her brakes before the accident, and only changed her testimony when

13   urged to by McCourtie); (b) that California Highway Patrol inspector Ed Lewis, who

14   inspected Smith's vehicle after the accident, stated that the vehicle could have been driven

15   for several days with a severed brake line before the entire braking system failed, and

16   further indicated that he could not say whether a complete brake failure would have taken

17   one day or ten days (when in reality Lewis opined that Smith's vehicle could have been

18   driven only a day or two after the accident and would have been unsafe from the very first

19   day); and (c) that plaintiff had articulated knowledge of how to cut a vehicle brake line

20   (when in reality McCourtie knew that plaintiff had inaccurately described the brake line, did

21   not have a driver's license or own a car, was a habitual liar, and had lied about owning an

22   auto repair shop).  <u>See, e.g.,</u> Pl. Opp. Br. at 7:25-13:27.

23        These purported misrepresentations and/or omissions, however, were neither

24   deliberately or recklessly false, nor material.  To begin with, a review of McCourtie's

25   interviews with plaintiff reflects that Smith did initially state that she did not notice anything

26   wrong with her brakes before the accident, and that after McCourtie mentioned that it would

27   have been difficult for plaintiff to have committed the crime immediately before her accident

28

United States District Court

For the Northern District of California

1    since he was in Utah, Smith then clarified her position to state that she noticed only that her

2    brakes were "squeaking" in the week before the accident.  See McCourtie Decl., Ex. 6 at 4-

3    5.  However, that same review also suggests that while Smith's recollection as to when she

4    noticed problems with her brakes did differ between initial recollection and subsequent, this

5    difference does not appear to have been a product of McCourtie's outright coercion or

6    manipulation, but rather Smith's own voluntary evolution of her story.  Furthermore,

7    McCourtie's police report – which supported both the arrest and search warrants  –

8    expressly states that while Smith noticed that her brakes were squeaking a week before the

9    accident, her brakes also still "seemed to be working" and as of the day immediately

10   preceding the accident, Smith did not "notice anything additionally wrong with the vehicle."

11   See id., Ex. 1 at 7-8.  And in his testimony at the preliminary hearing in February 2008,

12   McCourtie did unequivocally testify that Smith had initially told him that nothing was wrong

13   with her brakes immediately preceding the accident.  See Co Decl., Ex. A at MJ000383-84;

14   MJ000388-89.  In the court's view, these additional facts dispel any claim that McCourtie

15   "deliberately or recklessly made false statements or omissions" regarding the time that

16   Smith noticed any problems with her brakes.

17          Similarly, plaintiff has failed to demonstrate that McCourtie deliberately or recklessly

18   misrepresented Officer Lewis' testimony regarding the length of time that Smith's vehicle

19   might have been driven with impaired brakes.  Plaintiff highlights Inspector Lewis' testimony

20   that Smith's vehicle could have been driven for just a day or two after the brake lines were

21   cut, and that the car was unsafe even at that point.  See Declaration of Andrew F. Pierce

22   ISO MSJ Opp. ("Pierce Decl."), Ex. B at 22:14-21.  However, Inspector Lewis also testified

23   that the vehicle may have been driven for several days, in addition to the one or two after

24   the brake lines were cut, depending on differing variables – albeit in an unsafe condition.

25   See Pierce Decl., Ex. B at 23; Supplemental Declaration of Patrick Co ISO MSJ ("Supp.

26   Co. Decl."), Ex. D at 49:22-50:5.  Additionally, Inspector Lewis could not recall the exact

27   wording he used when conveying this information to McCourtie.  Supp. Co. Decl., Ex. D at

28

15

United States District Court

For the Northern District of California

1   49:22-50:5.  Thus, to the extent that McCourtie's police report reflects McCourtie's

2   statement that Inspector Lewis had stated that he could not say whether it could take one

3   day or ten days for the braking system to fail, this does not appear to have been a

4   deliberately or recklessly false representation or omission.

5         The same is true of plaintiff's assertion that McCourtie falsely represented that

6   plaintiff had articulated knowledge as to how to cut a brake line.  The undisputed facts

7   indicate that plaintiff, in his telephone interview with McCourtie, stated that he was familiar

8   with autos, that he owned an auto body shop, and he stated how would have cut the brake

9   line on Smith's car.  <u>See</u> McCourtie Decl., Ex. 1 at 19, 20-23.  These facts belie any claim

10   that McCourtie falsely represented in his report that plaintiff had articulated knowledge of

11   how to cut a brake line – even if the knowledge that plaintiff claimed to have ultimately

12   proved not to exist.

13         Moreover, none of these purported misrepresentations and/or omissions prove

14   material.  As already noted, materiality requires the plaintiff to demonstrate that "the

15   magistrate would not have issued the warrant with false information redacted, or omitted

16   information restored."  <u>Lombardi</u>, 117 F.3d at 1126.  And as defendants note, at the

17   February 2008 preliminary hearing, the presiding judge was given the opportunity to hear

18   the information that plaintiff asserts was misrepresented in McCourtie's police report – e.g.,

19   Inspector Lewis' testimony that depending on the driver and driving conditions, it would

20   likely be a day or two before the vehicle's brakes gave out; McCourtie's testimony that

21   Smith initially told him that she did not notice anything wrong with her brakes before the

22   accident – and despite this, nonetheless determined that probable cause existed.  This,

23   combined with the fact that the totality of numerous facts already discussed above

24   supported the existence of probable cause, compel the court to conclude that plaintiff has

25   failed to come forward with any evidence sufficient to maintain his claim for unlawful

26   seizure or search, premised on McCourtie's judicial deception.

27         In sum, and for all the foregoing reasons, the court accordingly concludes that (1)

28

1   the October 2, 2007 arrest warrant; (2) the February 28, 2008 preliminary hearing; and (3)

2   the subsequent March 6, 2008 search warrant, were each supported by probable cause.

3   As such, summary judgment is GRANTED in defendants' favor with respect to plaintiff's

4   section 1983 claim alleging unreasonable search and/or seizure pursuant to the Fourth

5   Amendment.  See, e.g., Pierson v. Ray, 386 U.S. 547, 555-57 (1967)(an officer is not liable

6   for damages based on a claim of false arrest if there was probable cause to make the

7   arrest).

8           2.      Qualified Immunity (Section 1983 Claim against McCourtie)

9           Defendants argue that even if McCourtie did not have probable cause to arrest

10  plaintiff or conduct any search, his actions are nonetheless protected by qualified immunity,

11  because clearly established law does not show that McCourtie violated the Fourth

12  Amendment, and any mistake of fact was reasonable under the circumstances.  See

13  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1962)(qualified immunity protects government

14  officials "from liability for civil damages insofar as their conduct does not violate clearly

15  established statutory or constitutional rights of which a reasonable person would have

16  known.").  While the court need not reach this argument in view of the foregoing analysis,

17  the court nonetheless determines that qualified immunity would apply to McCourtie.

18          Generally, for claims challenging the probable cause for an arrest or search, if the

19  warrant is facially valid, the arresting officer enjoys qualified immunity unless "the warrant

20  application is so lacking in indicia of probable cause as to render official belief in its existing

21  unreasonable...".  Malley v. Briggs, 475 U.S. at 335, 344-45 (1986); see also KRL v. Estate

22  of Moore, 512 F.3d 1184, 1190 (9th Cir. 2008)("[A]n officer who prepares or executes a

23  warrant lacking probable cause is entitled to qualified immunity unless no officer of

24  reasonable competence would have requested the warrant.").  To that end, only where a

25  warrant application is so lacking in indicia of probable cause as to render official belief in its

26  existence unreasonable will the shield of immunity be lifted.  Malley, 475 U.S. at 345; see

27  also Ortiz v. Van Auken, 887 F.2d 1366, 1368 (9th Cir. 1989).

28

**United States District Court**
For the Northern District of California

17

United States District Court

For the Northern District of California

1    Here, plaintiff does not strictly contend that McCourtie's warrant applications lacked

2    probable cause on their face.  Rather, as discussed above, plaintiff argues that McCourtie

3    misrepresented material facts to the judicial officers who granted the various warrants when

4    applying for the warrant; such falsification, contends plaintiff, falls outside the scope of any

5    immunity.

6    For all the reasons already discussed in connection with the foregoing probable

7    cause issue, however, the court is unpersuaded that any triable issue of fact has been

8    shown with respect to any deliberately or recklessly false representation made by

9    McCourtie in support of the arrest warrant, search warrant, and preliminary hearing at

10   issue.  Furthermore, in view of the totality of circumstances at issue in this case, the court

11   also concludes that McCourtie acted in an objectively reasonable manner in believing that

12   probable cause would have supported the issuance of the warrants at issue.

13   Accordingly, therefore, even if probable cause were found lacking with respect to the

14   October 2, 2007 arrest warrant; the February 28, 2008 preliminary hearing; and the

15   subsequent March 6, 2008 search warrant, defendant McCourtie would nonetheless be

16   entitled to qualified immunity with respect to plaintiff's section 1983 claim alleging Fourth

17   Amendment violations.  See Garcia v. County of Merced, — F.3d —, 2011 WL 1680388

18   (9th Cir. May 5, 2011)(finding probable cause for arrest and search warrant and applying

19   qualified immunity to defendant officers on basis of same record).  Summary judgment on

20   this ground is therefore GRANTED in defendants' favor.

21       3.    Due Process (Section 1983 Claim against McCourtie)

22   Defendants also seek summary judgment on plaintiff's section 1983 claim alleging

23   due process violations by defendant McCourtie.  Plaintiff apparently argues that McCourtie

24   is guilty of a due process violation, because he coerced Smith into giving false testimony

25   about the timing of her brake failures, and because he concealed and falsified evidence –

26   the same purported misrepresentations and omissions already discussed above in

27   connection with plaintiff's Fourth Amendment claim.

28

18

United States District Court

For the Northern District of California

1    For the reasons already stated, therefore, the merits of plaintiff's assertions

2   regarding McCourtie's coercion of the testimony and fraudulent misrepresentations are

3   unpersuasive, and unsupported by the evidence.  Moreover, the totality of undisputed facts

4   ultimately support a finding of probable cause.  Since the court has determined that the

5   undisputed facts support a finding of probable cause in connection with issuance of the

6   October 2, 2007 arrest warrant; the February 28, 2008 preliminary hearing; and issuance of

7   the March 6, 2008 search warrant, plaintiff has failed to raise a triable issue of material fact

8   as to his due process claim against McCourtie.  See Baker v. McCollan, 443 U.S. 137,

9   143-145 (1979)(noting that even "[a]n incorrect arrest does not provide grounds for a claim

10   of deprivation of liberty without due process if the arrest was made pursuant to a valid

11   warrant based upon probable cause.").

12    Accordingly, summary judgment is GRANTED in defendants' favor as to plaintiff's

13   section 1983 claim against McCourtie premised on due process grounds.

14    4.    Equal Protection (Section 1983 Claim against McCourtie)

15    Defendants also seek summary judgment on plaintiff's section 1983 claim alleging

16   equal protection violations by McCourtie.  Plaintiff asserts an equal protection violation on

17   the basis of plaintiff's status as a mentally disabled individual – which plaintiff contends

18   allowed McCourtie to manipulate plaintiff into giving a confession, and was the prime

19   reason that plaintiff initially became a suspect.

20    McCourtie's observations and awareness of the possibility that plaintiff was mentally

21   disabled, is undisputed.  See McCourtie Decl., Ex. 1 at 23.  Notwithstanding McCourtie's

22   observations, however, plaintiff has failed to come forward with any evidence sufficient to

23   support a triable issue of material fact as to the existence of an equal protection violation.

24   At a minimum, proof of an equal protection violation requires proof that plaintiff was

25   somehow treated differently than others similarly situated, by reason of plaintiff's suspect

26   classification.  See Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998)(a plaintiff

27   "must show that the defendants acted with an intent or purpose to discriminate against the

28

United States District Court

For the Northern District of California

1  plaintiff based upon membership in a protected class," and that plaintiff was treated

2  differently from persons similarly situated); Lee v. City of Los Angeles, 250 F.3d 668 (9th

3  Cir. 2001); see also Washington v. Davis, 426 U.S. 229, 239-40 (1976).  As defendant

4  notes, a plaintiff may satisfy this showing by alleging four separate elements: (1) that the

5  municipal defendant treated plaintiff differently from others similarly situated; (2) this

6  unequal treatment was based on an impermissible classification; (3) the municipal

7  defendant acted with discriminatory intent in applying this classification; and (4) plaintiff

8  suffered injury as a result of the discriminatory classification.  See, e.g., T.A. ex rel. Amador

9  v. McSwain Union Elementary Sch. Dist., 2009 WL 1748793 (E.D. Cal. 2009).

10      Here, plaintiff has failed to cite to any evidence that would support plaintiff's

11 differential treatment in comparison with any other identified individual or group, let alone

12 any evidence that would suggest a causal connection between plaintiff's treatment, and

13 plaintiff's status as a mentally disabled individual.[2]  In sum, there is nothing to demonstrate

14 that plaintiff was in fact subjected to differential treatment by McCourtie on the basis of his

15 mental disability.

16      For these reasons, summary judgment is GRANTED in defendants' favor as to

17 plaintiff's section 1983 claim against McCourtie on equal protection grounds.

18      5.      Monell Liability (Section 1983 Claim against the City)

19      Finally, defendants seek summary judgment in connection with plaintiff's section

20 1983 claim against the City, arguing that plaintiff can introduce no facts that will support a

21 claim for Monell liability.

22      The governing standard for section 1983 claims against municipalities is well

23 established.  See Monell v. Dept. of Social Serv. of New York, 436 U.S. 658, 690 (1987).

24 Monell expressly analyzed the applicability of section 1983 claims to local municipalities,

25 and held that local governments cannot be made liable for the unconstitutional actions of its

26 _____

27      [2]  Indeed, as noted by defendants, what plaintiff really seems to suggest is that he
28 should have been accorded special treatment because of his mental disability.

United States District Court
For the Northern District of California

1    employees under a respondeat superior theory.  See id., 436 U.S. at 692 (section 1983

2    "language cannot be easily read to impose liability vicariously on governing bodies solely

3    on the basis of the existence of an employer-employee relationship with a tortfeasor").  It

4    held, however, that when a local government's policy or custom is responsible for inflicting

5    injury at the hands of one of its employees, liability will nonetheless attach.  Id. at 695.

6    Courts must carefully police the line between accountability for actions truly intended by a

7    local government, and unfair imposition of respondeat superior liability on local

8    government.  To that end, in a case subsequent to Monell, the Supreme Court held that a

9    section 1983 plaintiff must demonstrate that, through "deliberate" conduct, the local

10    government is the "moving force" behind the injury alleged.  See Bd. Of County

11    Commissioners v. Brown, 520 U.S. 397, 404 (1997).

12        In order for plaintiff's section 1983 claim to succeed here, plaintiff is therefore

13    required to show both a violation of plaintiff's constitutional rights, and that the violation was

14    rooted in a policy or custom directly attributable to the City.

15        Here, for the reasons already stated, plaintiff cannot demonstrate a violation of

16    plaintiff's constitutional rights on the part of Officer McCourtie.  As a result, plaintiff's section

17    1983 claim as to the City fails, and summary judgment is accordingly GRANTED to the City

18    as to this claim.

19    C.    Conclusion

20        For the foregoing reasons, the court hereby GRANTS defendants' motion for

21    summary judgment.   The trial date is VACATED and the Clerk is directed to close the file.

22        **IT IS SO ORDERED.**

23    Dated: May 9, 2011

24                                                    _____
                                                     PHYLLIS J. HAMILTON
25                                                    United States District Judge

26

27

28